The first case on the calendar is United States v. Grammons. I'm sorry. Good morning, your honors.  My name is Heather Cherry, and I represent the United States government. I'd like to reserve three minutes for rebuttal. The district court abused its discretion when it held that Mr. Woolman's testimony ran afoul of this court's holding in Lit V.A.C. 2. The district court's order was irrational for three reasons. First, the district court's factual finding that Mr. Woolman's testimony implied that he believed there was a fiduciary duty was clearly erroneous, with no support in the record. Instead, the record showed that Mr. Woolman's testimony with respect to brokering and facilitating trades did not suggest a misperception of a fiduciary duty. And furthermore, the testimony was within the parameters of a reasonable investor in the RMBS market. Second, the district court misread Lit V.A.C. 2 to preclude a witness's commonly held factual description of the RMBS market. And reasons why the defendant's misrepresentations were believable, which was also consistent with all the record evidence. Isn't that the better of the two arguments you've stated so far? And I realize you haven't gotten to your third point, because with regard to the first, my initial reaction would be, isn't the district court in a better position to determine whether there was an implication from testimony that may have misled and confused the jury? But with regard to the second, you're saying that the court misread Lit V.A.C. 2. So can you tell me precisely how it misread Lit V.A.C. 2? Well, I will, Your Honor. So it misread Lit V.A.C. 2 to be much broader than what Lit V.A.C. 2 stood for. Lit V.A.C. 2, so in Lit V.A.C. 2, Brian Norris was a counterparty to Mr. Lit V.A.C. And at trial, he testified that he believed Mr. Lit V.A.C. was acting as his agent and acting on his behalf. And this court held that that was an idiosyncratic belief, that was an erroneous belief, and it was inadmissible because it was irrelevant. And then it sent the case back for retrial. Here, the court basically took that holding and essentially applied it to a much broader discussion or a much broader set of testimony that Mr. Woolman gave at Mr. Graman's trial. The district court said in its holding, in the discussion of the begin factors, that it would have been much better to not have included any testimony with respect to brokering or commission, even though the record is clear that that sort of testimony and that description of the RMBS market is supported in the record. It's within the mainstream thinking of an RMBS investor. It's not at all like Mr. Norris' testimony. But I thought the district court said it would be better to preclude use of the terms broker and commission, because in a juror's common experience, they imply a relationship that had some duty, if not a fiduciary duty, but a duty of honesty between a party and the broker. And also, it makes some implications about how a broker is compensated. Whereas in Lit Vact II, it said the broker is always acting as a principal in the RMBS market. And the use of the terms broker and commission here created a false understanding, potentially, in the jury. So isn't that a correct way of understanding what the district court was saying? It's concerned about this misapprehension that would have led to this sole count of conviction. No, I don't think so, Your Honor. First of all, just to be clear, Mr. Norris' part of the holding, this court's holding in Lit Vact II, was based on the fact that Mr. Norris' belief or testimony was erroneous, it was wrong, and it was idiosyncratic. Nobody else, the court found that nobody, no other reasonable investor, would have this same misperception. Here, terms like brokering and commission, those are common terms, market terminology that's used by the traders themselves and counterparts. The point is the jury might have misapprehended the meaning. I think there's two answers to that. First of all, throughout the trial and the testimony, the witnesses were very clear as to what they meant by brokering and commission, including witnesses that were co-conspirators, like Mr. DiNucci, who specifically described brokering not as having any kind of fiduciary duty, but as simply being a facilitator standing in the middle of a buyer and a seller. So, I don't think it's necessarily the same. And I want to get back to something that Judge Livingston said. I also don't think that the district court is necessarily in a better position than this court to evaluate the case, because it wasn't a credibility finding. It wasn't as if the district court or the district judge sat there and weighed Mr. Willman's credibility. But instead, he basically disregarded all the factual evidence that was on the record. When he made the assumption that Mr. Willman's testimony, that Mr. Gromans was facilitating or brokering a transaction, somehow implied a fiduciary duty. Well, weren't there misstatements, and I understand this is testimony, but Willman at one point stated his understanding that when Gromans was brokering a transaction, they aren't his bonds, Gromans' bonds. Well, I guess legally, they were for a short period. But statements like that could possibly confuse a jury in the context if the district court doesn't feel its instructions are clear enough, that the jury could misunderstand the relationship. And there were factual misstatements in Willman's testimony to that effect. I think there's two answers to that. First, there was extensive curative instructions throughout the trial. First, during the trial, there was a curative instruction, specifically about fiduciary duty and the fact that, excuse me, there was no fiduciary duty, that at all times Nomura was acting as a principal and these were principal-to-principal transactions. And then, also during the final set of jury instructions right before closing arguments, the district court specifically said that there was no duty of loyalty at any time. And I see that my time is up. Good morning, Your Honors. My name is Mark Mukasey. I represented Mr. Gromans during the trial on the Rule 33 motion below, and I represent him on appeal. Your Honors, the review here, as you know, is quite a limited one, an abuse of discretion standard. And that Rule 33 statute confers broad discretion on the trial court to set aside a jury verdict and order a new trial when the court cannot have confidence in the verdict that was reached below and to avert a perceived miscarriage of justice. And in doing so, the court is entitled to take a look at the entire circumstance of the case, the totality of the facts, the totality of the circumstances, and in his position as district judge, he's obviously best suited to do that. Among the factors that Judge Schotteny looked at was what he called a weak case, or at least a vigorously contested case on the materiality issue. Twenty-six failures to convict out of 27 counts, and one lone count of conviction that could be tied directly to the post-lit vac testimony of Joel Wollman. And with respect to Wollman's testimony, notwithstanding the fact that he never used the word agent and notwithstanding the fact that the jury was instructed that he was not, in fact, an agent. Well, can I just ask, we said in Lit Vac 2 that point of view testimony is permissible so long as the word phrasing we used was within the parameters of the thinking of reasonable investors. What is it that put Wollman's testimony outside of those parameters, or does it matter? Well, I think Lit Vac 1, Lit Vac 2, and Judge Schotteny all stated that the concept that the broker-dealer, the trader, Mr. Grammans, or Mr. Norris in the Lit Vac case, owed any kind of duty of honesty, truthfulness, fiduciary duty, legal duty, duty of moral dealing, is a false one. And that's what took Wollman's testimony, where he says things like, I expected Grammans to do what I told him to do. I viewed his role as clerical. I told him to do it, and I expected him to do it. That is fundamentally at odds with the sophisticated investors in the RMBS markets who understand they're in an arm's-length, face-to-face, adversarial relationship with everybody they do business with. But he wasn't the only witness, and I'm just trying to understand this market and this record, who testified that to some degree of, I trust what the broker is saying when I'm dealing with a counterparty that I don't speak with, and he makes factual representations to me. One said, I only speak through the broker, so I rely on the information they give me and these non-inventory transactions. Yet another said, in this kind of negotiation with another end account, where Nomura was the middleman, accurately relying information back and forth would have been important. So your argument has to, unless you're saying that was, that evidence was improperly given to, your argument is that Wollman went significantly beyond that in a way that confused the jury. I do think Wollman's testimony went significantly beyond that. He was the only witness to testify that he expected the relationship with the broker-dealer to be clerical, to be administrative, to do what he said. And by the way, the jury acquitted on every count where those other quote-unquote victims said that they believed in some trust and they believed in some, they expected some duty of honesty. Those were 26 acquittals, or 26 failures to convict, to be more accurate. The reason there was a conviction, at least according to Judge Schotteny, with respect to the Wollman testimony, I think is twofold. First of all, his testimony did go further. It was more erroneous, and by the way, we know from, Judge Carney knows from Litvak, having sat on Litvak 1, which was expanded upon and clarified in Litvak 2, Wollman testified two times before he got to our trial that he thought the broker-dealer, the Gramman's person or the Norris person, was an agent and was functioning at the behest of the counterparties. So we know that Wollman's testimony was a bit of an outlier in the sense of the duties that he expected improperly. And we know that it was Wollman's testimony that, or at least I think as Judge Schotteny said, it's reasonably likely that it was Wollman's testimony that led to the conviction here because it was the only, this jury was unwilling to convict clearly on any pre-Litvak testimony. No matter what anybody said, there was not a conviction out of 27 counts on any pre-Litvak testimony. So . . . You've got no problem with the jury instructions. They were crystal clear, right? I have no problem with the jury instructions. And if you're speaking with respect to the agency . . . Right. So my view is this case is not really a jury instruction case. The jury was properly instructed. Right. So they were told about what the relationship was and it wasn't an agency relationship. Correct. So what was it about Wollman's testimony that raised concerns that the jury didn't follow those instructions? Okay. So this jury was told Wollman was not an agent the same way Litvak's jury was told Norris is not an agent. It is correct to say that Gramins was not an agent. The fact that Gramins was not an agent makes the testimony that Wollman thought subjectively, idiosyncratically, and outside the realm of a reasonable investor, that he was an agent all the more improper. And the jury becomes infused . . . But that's based on the use of the word clerical. I mean, he never said agent, right? Correct. It's based on a lot of his testimony that he thought Gramins was essentially a functionary who was acting between him and another party without an interest in the transaction. That's fundamentally wrong. And what the Second Circuit found in Norris . . . I'm sorry, in Litvak . . . And what Judge Shotney picked up on here was that a jury that's led to believe that a perceived relationship of trust, subjective, idiosyncratic trust, showed materiality is wrong. That's the danger here. Okay, he's not an agent, but you're allowed to consider, this jury could have thought, the quote-unquote victim's subjective belief that there was this trust relationship there. And that's really where the danger flows from. Whether you use the word agent, you use the word facilitator, you use the word middleman, the danger flows from the notion that this quote-unquote victim believed he was owed some duty of honesty, duty of truth by Mr. Gramins. And that's what the Second Circuit said becomes a backdoor for this heightened expectation that Wallman had from Gramins and that the jury obviously picked up on. And in a case . . . Why do you say the jury obviously picked up on it? Well . . . Because they convicted him? Because they convicted him, and he was the outlying witness with respect to describing . . . I mean, he was sort of the most egregious in describing it that way. The jury obviously didn't find anybody else's testimony to be at all persuasive. And I think we can quibble here or argue in good faith about whether this was the right inference or the right thought by Judge Schotteny. But the issue really here is, in a case this weak and this slim and this marginal, it was not unreasonable for Judge Schotteny. It was not kind of off the charts, arbitrary, irrational for him to conclude that this Wallman testimony was too close to the Norris type of testimony that led to the conviction. And in a weak case, it heightens the impact of the tainted evidence. So, whereas the jury may not have been willing to convict on the 26 counts on which it didn't convict based on the testimony of those quote-unquote victims, here, the impact of this idiosyncratic, subjective, and erroneous testimony with respect to the JPMAC was obviously heightened. However way you want to look at it, you know, the Second Circuit case law says, Ferguson says it, Sanchez says it. A different district judge might have interpreted this a different way. That doesn't mean this is an abuse of discretion. Judge Schotteny looked in a very careful opinion, and I'm going to just volunteer this in my last 20 seconds. I know that Judge Livingston and Judge Carney, you looked at a case that Judge Schotteny, I think, denied a motion or granted a motion for a new trial, did something adversarial to a defendant, and you both sent it back for further fact-finding. The name of the case now is escaping me, but it was a couple of years ago. But in this case, and if I can just take 10 more seconds, in this case, Judge Schotteny carefully tracked the language of Litvack, carefully tracked the reasoning of Litvack, carefully tracked the harm that flowed from the improper testimony, carefully laid out why this backdoor testimony about a subjective idiosyncratic belief in trust was harmful and was likely to or in danger of confusing the jury, and set it out in a way that, you know, I think blind deference to that jury verdict is not required. And really, he's within the realm of his broad discretion under Rule 33, and his opinion should be affirmed. Thank you, Your Honors. I'd like to make three quick points, and then if there are any questions. First, just about the count of conviction and whether or not it was tied to the JPM Act trade or to Mr. Woolman's testimony. It's not necessarily clear that it was, in fact, Mr. Woolman's testimony that caused Mr. Graham or the jury to find Mr. Graham guilty of conspiracy. This is not like Litvack, where each count was a substantive count. And so he was found, Mr. Litvack was found guilty of the count that Mr. Norris, the trade that Mr. Norris testified about. This is a conspiracy. There was tons of evidence, and there's nothing that shows that Mr. Graham was convicted because of Mr. Woolman's testimony, which was not idiosyncratic or different from any other witness's testimony. And even if one assumes that it was because of the JPM Act trade, which is what Judge Shotney said, the whole point of that trade is that it occurred after Litvack. And so if anything, the jury found him guilty not because they had some issues with materiality, which is what Mr. Woolman's testimony is presumably about, but because there was some concern about intent. And at this point, after Litvack was indicted, there was no issue with intent. Of course, Mr. Graham understood that this behavior was unacceptable, wrongful, and illegal, or at least the government had thought so. And so really, if you want to say that, oh, it must have been this particular trade, well, then you look to intent. Second, Mr. McKenzie was talking about how somehow Mr. Graham and Mr. Woolman's testimony about administrative or clerical led to a belief that there was a fiduciary duty. I think reading the record, there is nothing to point to the fact that Mr. Woolman believed there was a fiduciary duty because there was an administrative role. But furthermore, the record supports the thought that that was, again, not idiosyncratic. Others testified in a similar way. Mr. Abbas, who was another counterparty who worked at the Hartford, he testified that he expected, in the trade that they discussed, Mr. Chow, who was someone who worked for Mr. Gramman's and was taught to lie by Mr. Gramman's. He expected, in these situations, for Mr. Chow to relay his bid. He thought of him as a facilitator, that is, relaying Mr. Abbas's bid to the prospective seller. That's, in a sense, administrative and clerical. It doesn't make Mr. Woolman's testimony idiosyncratic. Mr. Chow himself testified that they basically said things to make Mr. Gramman's bid. I think that they were working on their behalf because that was part of the scheme to defraud. Then, if I can make one last point. I know my time is up, but I do want to get back to something that Judge Carney spoke about. You had said, well, what's wrong with . . . what's wrong . . . the district judge wanted to just not have brokering. Isn't that what Litvak said? I just want to be clear. It wasn't only the victims who talked about brokering in this record. It was also the co-conspirators. Mr. DiNucci, who worked for Mr. Gramman's, described his role as brokering. And then Mr. Gramman's himself. There is a Bloomberg chat where Mr. Gramman's refers to himself and says to the counterparty, I am only looking to broker this trade. It's market terminology. It is not . . . it in no way implies a fiduciary duty. So if there's no further questions, thank you very much. Thank you both. Well argued.